**UNITED STATES of America ex rel. Frank LOTT, Petitioner,**

v.

**Vincent R. MANCUSI, Superintendent, Attica Correctional Facility, Attica, New York, Respondent.**

**No. 71 Civ. 494.**

United States District Court, S. D. New York.

May 4, 1971.

Frank Lott, pro se.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for respondent; Arlene R. Silverman, Asst. Atty. Gen., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, now serving a sentence of fifty years to life imprisonment, imposed under a judgment of conviction entered on June 5, 1962, upon his plea of guilty to murder in the second degree in the Supreme Court of the State of New York,[1] seeks his release upon a federal writ of habeas corpus. The petitioner had been brought to trial upon an indictment charging him with murder in the first degree in the killing of a police officer during the course of a holdup. The plea of guilty to the reduced charge of murder in the second degree was entered after the trial proper and while the jury was deliberating. He was represented upon the trial and at the entry of his guilty plea by three court-appointed attorneys. Petitioner attacks the judgment of conviction as void upon the grounds (1) that he was denied due process of law in that before the entry of his plea he was not advised of a note or communication from the jury to the trial court that it was deadlocked; and (2) that the plea of guilty was the product of fraud, the ineffective assistance of counsel and coercion resulting from fear of the death penalty.

At the outset it should be noted the petitioner states that "[t]he grounds presently alleged in this petition has not [sic] been previously presented to any

---

1. On October 21, 1969, petitioner's original sentence was vacated and he was re-sentenced, pursuant to the mandate of People v. Montgomery, 24 N.Y.2d 130, 299 N.Y.S.2d 156, 247 N.E.2d 130 (1969); cf. People v. Lynn, 28 N.Y.2d 196, 321 N.Y.S.2d 74, 269 N.E.2d 794 (Apr. 8, 1971), nunc pro tunc as of June 5, 1962 to the 50-year to life term originally imposed.

court, State or Federal." If this is so, the petition should be dismissed without further consideration for failure to exhaust available state remedies.[2] However, the allegation may be considered an extravagance of rhetoric, since the record here presented indicates that the substance of his claims has been presented to and passed upon by the state courts, including appellate review.[3] Accordingly, petitioner's claims are considered on the merits, but are found without substance.

Petitioner's claims in the main stem from an alleged note or communication to the court from the jury during its deliberations, the existence of which the State has denied and which was the subject of a coram nobis petition filed in the State Court in June, 1966. The petitioner then sought relief upon the ground that the trial court had failed to apprise him of the alleged note from the jury that it was deadlocked, in consequence of which he contended that his plea was fraudulently entered. An evidentiary hearing was held, at which the trial judge, the Assistant District Attorney, one of petitioner's three counsel, court clerks, a juror and petitioner testified.[4] The coram nobis judge found that no communication had been received by the trial court from the jury to the effect they were deadlocked.[5] He did find that during the jury's deliberation, at an informal discussion with the Assistant District Attorney and defense counsel, the trial judge had expressed his opinion or belief that the jury would not agree upon a verdict; that thereafter defense counsel, during the course of a conference with petitioner on the subject of a plea of guilty to second degree murder, which the prosecutor indicated he was prepared to accept, advised petitioner of the informal bench conference at which the trial court had expressed its opinion that the jury would not agree upon a verdict. The coram nobis judge also found that petitioner's counsel had informed him of a conversation with the detective in charge of the case to the effect that if there were an acquittal, the defendant would be charged with robbery in the first degree, based upon the holdup.

A further finding was made by the coram nobis judge that the plea of guilty was not fraudulently or illegally obtained, nor was the petitioner in any way coerced by his counsel in taking such a plea, and accordingly the petition was dismissed. The latter finding was based upon testimony given by petitioner's counsel that the subject of a guilty plea to the lesser crime of murder in the second degree was discussed with petitioner while the jury was still deliberating, some eight or nine hours after it had commenced deliberations; that in addition to advising petitioner that the jury might convict him of murder in the first degree, acquit him, or fail to reach a ver-

2. 28 U.S.C. § 2254(b).

3. Petitioner appealed from the denial of his two coram nobis applications referred to herein, as well as from the original judgment of conviction following resentencing, all of which were consolidated and affirmed by the Appellate Division, without opinion. Leave to appeal to the Court of Appeals was denied.

4. The coram nobis proceedings were extremely protracted, apparently as a result of numerous adjournments requested by petitioner's counsel to enable him to obtain witnesses. The hearing, which took only parts of three days, was spread over a period of more than a year and a half.

5. Petitioner originally did not appeal from the judgment of conviction. The coram nobis claim was triggered several years thereafter, when petitioner obtained a copy of the recommendation by the Assistant District Attorney of acceptance of petitioner's offer to plead to a lesser crime than that charged in the indictment, required by § 342–a, N.Y.Code Crim.Proc. This recommendation was filed after the entry of the plea and contained a statement by the prosecutor to the effect that the jury had reported it could not agree on a verdict. The Assistant testified this was incorrect; that he had assumed as much from the trial judge's comment during an informal talk with the lawyers that he did not believe the jury would agree upon a verdict.

dict, Mr. Direnzo, one of his attorneys, also stated that if a guilty verdict were returned, there was a good chance that the death penalty would be imposed, since the decedent was a police officer;[6] that the State was prepared to recommend acceptance of a guilty plea to murder in the second degree; however, the attorney emphasized that the decision as to whether to plead was entirely up to petitioner and had to be made without regard to the attorney's view; finally, the attorney denied urging petitioner to plead guilty. There were several conversations with petitioner along the same lines, at times participated in by co-counsel, all while the jury was still deliberating, before petitioner entered a guilty plea to the lesser charge, following which the jury was called in and informed of it and discharged from further deliberation.

Petitioner at the coram nobis hearing testified in contradiction to his attorney as to the substance of their conversations preceding the entry of the plea, and he branded the attorney's version as false. He testified that prior to pleading guilty he was never advised that the jury was deadlocked; that his lawyer had not informed him of the judge's opinion or belief that the jury would never agree; further, that had he known the jury was deadlocked, he would not have entered the guilty plea, and that he was induced to do so by the urgings of his lawyers. Petitioner's testimony revealed that he was not without prior experience with

the law. His record included two felony convictions, assault in the second degree and attempted robbery in the first degree, and he admitted the robbery out of which the murder charge arose.

The juror testified that he recalled a note had been handed by the jury foreman to a court attendant stating that the jurors were hopelessly deadlocked. The court clerks and the attendant testified in substance that the court records, including an exhibit, revealed only one note from the jurors, a request for reading of testimony, which was done.[7] The coram nobis judge, in the light of the record and the juror's testimony, branded the juror's recollection of what occurred as "not only unbelievable, but incredible."

The plea minutes show that the defendant acknowledged the voluntariness and his full understanding of the guilty plea, which was to cover "any and all known crimes or unknown crimes" except homicide committed by him in the County of New York. Upon acceptance of the plea, petitioner addressed the court, saying: "I'd like to thank Mr. Direnzo and Mr. Chance, Mr. Kove [his attorneys] and their associates for helping me in this case and I really appreciate it." The court then inquired: "That's for saving your life?" to which petitioner responded, "Yes, sir."[8]

██ Upon a careful review of the coram nobis proceeding and the State record, this court is satisfied that peti-

6. Under New York law in effect at the time of petitioner's trial, a conviction of murder in the first degree, committed during the course of a felony or an attempted felony, carried with it a sentence of death, unless the jury as part of its verdict recommended life imprisonment, upon which "recommendation the court may sentence the defendant to imprisonment for the term of his natural life." Former N.Y.Penal Law, §§ 1045, 1045–a (McKinney's Consol.Laws, c. 40, 1944).

7. The juror's testimony concerning this request was confused. He first testified that "they called in the grocer; there was a Chinese grocer * * *. I think he went back on the stand again as I re-

member." Later, in response to a question put to him by defense counsel as to whether the grocer's testimony was read, the witness answered, "[t]hat could have been, I don't recall to be too exact on it, but I know we came back for testimony." [R. 47, 49].

8. The sentence minutes of June 5, 1962 reveal that defendant, in response to inquiry, answered he had no cause to show why sentence should not be imposed, and also that Mr. Chance, one of his attorneys, stated that the defendant wanted him "to reiterate his gratitude to the Court, his gratitude to Counsel, and that he is sincerely sorry * * *."

tioner, on the claims there presented, was afforded a full, fair and adequate hearing, and that the factual determination made therein is fully and abundantly supported by the record.[9]

Within less than two months after the dismissal of the first coram nobis proceeding, petitioner, in May 1969, commenced a second one upon claims (1) that he was offered the "impermissible choice" of abandoning trial by jury by pleading guilty and thus being assured that he could not be electrocuted, or by continuing the trial by jury at the risk of his life, and (2) that his plea of guilty had been "demonstrably coerced" by his counsel and that the court and District Attorney joined in the coercive tactic. The petition was devoid of evidentiary matter and contained conclusory and argumentative allegations. The substance of his contention was that since he faced the prospect of a death penalty if the jury continued its deliberations, the plea was necessarily coerced, especially so since he alleged his lawyer had told him that "if he didn't accept the offered guilty plea he would no doubt get the chair when the jury returned; and that it was up to defendant to decide whether he wanted to live or die." Accordingly, he contended he was coerced into a plea to avoid the risk of death. This coram nobis application came on before the trial judge who, without a hearing, rejected petitioner's purported constitutional claims on the ground they were "without any factual support."

■ Petitioner's second claim of constitutional infirmity of his judgment of conviction presented to this court parallels that presented in the second coram nobis petition. The skeletal allegations contained no evidentiary support for his claim that the guilty plea was the product of fraud and the ineffective assistance of counsel. The record demonstrates, as the first coram nobis judge found after a hearing that the "plea of guilty to murder in the second degree was not fraudulently or illegally obtained nor was the petitioner in any way coerced by his counsel into taking such a plea." Nothing, not a scintilla of evidential matter, has been submitted to impugn the integrity of that finding. Moreover, the fact that petitioner faced a possible death penalty at the hands of a jury if he continued with the trial does not establish coercion,[10] as a matter of law, as petitioner contends.

■ The record here demonstrates that petitioner's plea of guilty was entered voluntarily and understandingly when represented by competent and effective counsel, and there is not the slightest basis to invalidate it upon the asserted claim of constitutional infirmity. The petitioner, when questioned by the court before the plea was accepted, admitted that during the holdup he fired the shot that killed the policeman. By his plea to a lesser charge, he not only avoided the risk of a jury verdict with a possible death sentence, but was astute enough to have his plea cover all crimes, known and unknown. In a capital charge of murder in the first degree, a jury trial is mandated, since waiver of a jury trial is prohibited by the New York State Constitution,[11] and the determination of the sentence, whether life imprisonment or death, rests with the jury. However, under New York law in effect in 1962, a defendant indicted for murder in the first degree could plead guilty to the lesser charge of murder in the second de-

9. 28 U.S.C. § 2254(d); *see* Townsend v. Sain, 372 U.S. 293, 312–314, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. Smith v. Follette, 268 F.Supp. 751, 753 (S.D.N.Y.1967), aff'd, 405 F.2d 1199 (2d Cir. 1969).

10. *Cf.* United States ex rel. Brown v. LaVallee, 424 F.2d 457, 464 (2d Cir. 1970).

Moreover, an advisory assessment by his lawyer of the defendant's situation in a capital case prior to his entering of a guilty plea to a lesser charge does not affect the voluntariness of the plea. *Id.* at 460–461.

11. N.Y.State Constitution, Art. I, § 2.

gree, notwithstanding the constitutional mandate,[12] although petitioner had no absolute right to require the prosecutor or court to accept his proffered plea to the lesser charge.[13] Thus, had the prosecutor or the court declined to accept his offer to plead to a lesser charge, or if petitioner had made no such offer, the trial would have continued for determination by the jury. The discussions on the subject of the guilty plea involved only petitioner and his lawyers; neither the trial judge nor the prosecutor were present.[14]

With petitioner's background and experience, in addition to what his counsel told him during the conferences while the jury was deliberating, he knew that if the jury continued its efforts, alternative results were possible; it might return a verdict of guilty of murder in the first degree with a sentence of death, unless the jury recommended life imprisonment;[15] it might acquit him of the charge, in which event he faced prosecution on the robbery charge, or the jury could fail to reach a verdict, in which event he faced a retrial before another jury, again with the alternative determination of a life or death sentence were he found guilty.

█ Under the circumstances, the record leaves no room for doubt that petitioner's plea was voluntarily and freely entered after consultation with competent counsel and because he deemed it in his best interest to do so. The record is equally clear that his attorneys emphasized the ultimate decision had to be his own. He made a free and rational choice after a full opportunity to appraise the advantages and disadvantages of continuing with his jury trial as compared to the entry of a guilty plea, which at once maximized his sentence to life imprisonment. That the plea may have been motivated in part to avoid a possible death penalty authorized under a jury trial does not by itself detract from its voluntariness.[16]

The petition is dismissed.

12. Under this circumstance, a "defendant did not plead guilty to a capital crime, and the law does not preclude the entry of a plea of guilty, and a conviction thereon, of a noncapital crime under an indictment charging a capital crime. (People v. Smith, 1894, 78 Hun 179, 28 N.Y. S. 912)." People v. Lyons, 19 Misc.2d 606, 196 N.Y.S.2d 446, 449 (1952). See N.Y.Code Crim.Proc. §§ 332, 334, 342-a (McKinney's 1958). Former New York Penal Law, § 1045, was amended in 1963, a year after petitioner's plea was entered, to provide that a defendant indicted for murder in the first degree may plead guilty to that charge with a sentence of life imprisonment when the court and the District Attorney consent. L.1963, c. 994, § 1, effective May 3, 1963.

13. Lynch v. Overholser, 369 U.S. 705, 719, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962); cf. North Carolina v. Alford, 400 U.S. 25, 38 n. 11, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

14. Cf. United States ex rel. Brown v. LaVallee, 424 F.2d 457, 461 (2d Cir. 1970).

15. Former N.Y. Penal Law, §§ 1045, 1045-a (McKinney's 1944).

16. Indeed, the Supreme Court held this Term in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), that a guilty plea offered in a capital case solely to avoid the risk of a death penalty, notwithstanding the defendant's claim of innocence, was voluntary. The standard for accepting a guilty plea in capital as in other cases, therefore, "remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. See Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969); Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962); Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). That he would not have pleaded guilty except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." Id. at 31, 91 S.Ct. at 164. Cf. Parker v. North Carolina, 397 U.S. 790, 795, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); Brady v. United States, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).